Robert J. DAVIS in his own behalf and all others similarly situated, Appellees,

v.

BOARD OF EDUCATION OF the NORTH LITTLE ROCK, ARKANSAS, School District, a public body corporate, and F. B. Wright, Superintendent of Schools of the North Little Rock School District, Appellants.

No. 79–1640.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1980.

Decided Dec. 24, 1980.

Robert V. Light, Little Rock, Ark., for appellants.

John W. Walker, P. A., Little Rock, Ark., for appellees.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.

HEANEY, Circuit Judge.

The North Little Rock Board of Education and its superintendent appeal from an order of the United States District Court for the Eastern District of Arkansas. The appellants ask this Court to hold that the district court erred in denying their motion to vacate all prior decrees and orders of the district court on the ground that the North Little Rock school system has been integrated for many years. The appellants also urge us to set aside the order of the district court requiring the school district to provide, at its own expense, transportation to high school students residing in the "Dixie Addition" of the city, and who attend North East High School. Finally, the appellants

ask us to set aside the order of the district court requiring the school district to establish and implement a plan designed to fully integrate the faculty and staff of the school district, and to hold that the district court erred in awarding attorneys fees to counsel for the plaintiffs. We affirm the order of the district court.

On August 5, 1968, an action was initiated in the United States District Court for the Eastern District of Arkansas to integrate the North Little Rock School District. Between that date and April 30, 1975, the matter was before the district court on four occasions,[1] and once before this Court en banc.[2] The present appeal is from an order entered on June 29, 1979, by Judge Elsijane T. Roy, denying the defendants' motion to vacate all earlier orders and decrees issued by the late Judge Terry L. Shell. Judge Roy's order essentially affirms a September 13, 1977, order of Judge Shell, who died while a petition for reconsideration of his orders was under consideration. We look to Judge Shell's opinion and order to determine the factual basis of this appeal. That opinion reveals that the plaintiffs filed a motion with the district court on April 30, 1975, requesting additional relief with respect to pupil transportation, faculty and staff assignments and extracurricular student activities. They also moved the district court to issue a contempt citation against the school board members and the defendants' counsel for failure to comply with the 1971 mandate of this Court. *Davis v. Board of Educ.*, 499 F.2d 500 (8th Cir. 1971) (en banc). A three–day hearing on these issues was held in April, 1977.

## I

## TRANSPORTATION

At the 1977 hearing before Judge Shell, the plaintiffs introduced evidence that tended to show that the majority of black students who lived in the Dixie Addition of North Little Rock were required to attend high school at North East High School, located in the northeast corner of North Little Rock, Arkansas. The district court determined that there was "no reasonable safe pedestrian pathway from 'Dixie' to North East High School," and that the transportation plan in existence "imposes an undue transportational burden upon those black students who reside in the Dixie area." Judge Shell ordered the school district to provide transportation, at its own expense, to all high school students who reside in "Dixie" and are required to attend North East High School. He left it to the parties to work out the details regarding the number of buses required and the geographic points from which the buses would depart and return.

The record fully supports the district court's findings and conclusions. There is abundant testimony in the record indicating that students living in the Dixie Addition are required to cross a major interstate highway at the busiest time of day to reach North East High School; that there is no safe and convenient way to cross that highway; and that students are required to walk on the streets through much of the route between "Dixie" and the high school–a distance of about two miles. The record also reveals that many of the families that live in the Dixie Addition are low income families who are unable to afford the cost of public transportation to and from school; it further reflects the fact that public transportation is not always convenient or dependable. We also note that the district court was concerned with equalizing the burden of integration as between the black and the white students in the school district, and believed that providing transportation to the predominantly black Dixie high school students was one way of accomplishing this goal. We agree that the goal

1. *Graves v. Board of Educ.*, 299 F.Supp. 843 (E.D.Ark.1969); *Graves v. Board of Educ.*, 302 F.Supp. 136 (E.D.Ark.1969); *Davis v. Board of Educ.*, 328 F.Supp. 1197 (E.D.Ark.1971), *modified on appeal*, 449 F.2d 500 (8th Cir. 1971) (en banc); *Davis v. Board of Educ.*, 362 F.Supp. 730 (E.D.Ark.1973).

2. *Davis v. Board of Educ.*, 449 F.2d 500 (8th Cir. 1971) (en banc).

is a legitimate one and that it will be achieved in part by the district court's order. *See Clark v. Board of Educ.*, 449 F.2d 493 (8th Cir. 1971) (en banc), *cert. denied,* 405 U.S. 936, 92 S.Ct. 954, 30 L.Ed.2d 812 (1972).

## II

## FACULTY AND STAFF

In *Davis v. Board of Educ.*, 449 F.2d 500 (8th Cir. 1971) (en banc), we required the Board of Education to establish and implement objective and nondiscriminatory standards respecting the employment, assignment and dismissal of teachers. We noted that nondiscriminatory subjective factors could be considered in the decisionmaking process, but that they should be given little weight because of the past history of racial discrimination in the school district. Judge Shell determined that this Court's instruction had not been followed by the Board; he found that the Board's policy continued to be an informal one, which only purported to select the most qualified applicants. He stated:

> [T]he effect of this informal employment policy has been maintenance of a body of faculty and staff which is top–heavy in percentages of whites in supervisory and administrative positions, secondary school teaching positions, and such specialty positions as librarians, guidance counselors, and head athletic coaches. On the other hand, the percentage of blacks who maintain positions as elementary school teachers and service workers is high.

*Davis v. Board of Educ.*, No. LR–68–C–151 (E.D.Ark. Sept. 13, 1977).

Judge Shell noted that although twenty–six percent of the students and twenty percent of the faculty were black, only one of the twenty–three administrators and supervisors in the central office was black; that only five of the twenty–six school principals were black (four of the five being assigned to elementary schools); that only two of the fourteen guidance counselors were black; and that only two of the librarians or audiovisual staff assistants were black. He held that the Board of Education was under a continuing mandate from this Court to implement objective nondiscriminatory standards with respect to the assignment of faculty and staff, and that it would be required to take the actions set forth below to comply with that mandate:

(1) That the defendants proceed forthwith to establish and implement a system that will ensure that complete records are kept of positions that become available on the faculty and staff, the number of persons who applied for the positions and their respective qualifications, the name of the person who was offered the position, and the means utilized for notification of the opening;

(2) That the defendants shall establish a procedure which will provide reasonable notice to the community and the faculty and staff themselves that employment is available;

(3) That the defendants in good faith shall use reasonable means to recruit qualified black applicants for available positions where the percentage of blacks in similar positions in their employ is below the percentage of black student enrollment;

(4) Likewise, the defendants in good faith shall use reasonable efforts to recruit non–black applicants where the percentage of blacks who presently fill similar positions is greater than the percent of black student enrollment. The Court does not intend to hold the school district to exactness with regard to the percentages mentioned above. Substantial compliance is what the Court seeks in order to assume that the faculty and staff of the school district are free of racial identifiability at every level. The defendants shall report to the Court within ninety days of the date of entry of this memorandum opinion on their progress in this area.

(5) That the defendants shall review the criteria for employment in each employment position it maintains and revise same in accordance with the substantive provisions of 42 U.S.C. § 2000(e) *et seq.,* to ensure that each criterion is job related

within the meaning of "bona fide occupational qualifications."

*Davis v. Board of Educ., supra,* No. LR–68–C–151 (E.D.Ark. Sept. 13, 1977).

■ We believe that Judge Shell's findings are more than adequately supported by the record and that his order is an appropriate one which hopefully will ensure a non-racially identifiable faculty and staff at every level of the school system.

We also note that the record is replete with evidence that black students do not participate in proportion to their numbers in certain extracurricular activities including cheerleading, pep club, band, drill team and future homemakers. The record also shows that black students are suspended more frequently than white students and that they tend to be numerically overrepresented in the special education classes for slow learners.

There is a serious dispute in the record regarding the reasons for lack of participation in the listed extracurricular activities, for the more frequent suspensions and over-representation in the classes for slow learners. The plaintiffs introduced evidence tending to show that the school district and its administrators were responsible, and that these conditions resulted because of the discriminatory policies of the Board, the school administrators and the faculty. The Board introduced evidence tending to show that nonracial factors were responsible for the conditions. Judge Shell did not explicitly decide these issues. He rather stated that he was convinced that the established racial disparities in these areas did not rise to the level of systematical discrimination, and that the individual incidents of discrimination were not within the scope of the case before him. While we are not prepared to hold at this time that the district court's rulings in these regards are clearly erroneous or based on an erroneous view of the law, we are satisfied from the record that the situation can be dramatically improved if this Court's earlier mandate, requiring a nonracially identifiable faculty and staff at *every level* of the school system, is promptly implemented. Judge

Shell's order, which we affirm today, imposes that requirement on the Board of Education.

## III

## ATTORNEYS FEES

In view of our holding that the district court acted properly in ordering the transportation of high school students living in the Dixie Addition to North East High School, and in view of his findings that the faculty and the staff of the school district had not been integrated as required by this Court's order of 1971, Judge Roy did not err in refusing to vacate Judge Shell's prior decrees and orders on the ground that the defendants were operating a unitary school system. More remains to be accomplished before it can be said that the North Little Rock School District is fully integrated.

■ In light of the fact that we have affirmed the substantive decisions of the district court, we also affirm its decision to award attorneys fees to plaintiffs' counsel for services rendered in the district court action. The fees shall be computed in accordance with Judge Roy's order of June 29, 1979. Counsel for appellee is directed to submit an affidavit to this Court within ten days of the issuance of this Court's mandate in support of an allowance of attorneys fees for this appeal.

Judge Roy's order denying the defendants' motion to reconsider Judge Shell's earlier orders and decrees is affirmed.

We remand this matter to the district court with directions to it to take action consistent with this opinion and to retain jurisdiction until such time as the North Little Rock School District is thoroughly integrated.