Mary BORELLO, Plaintiff-Appellant,

v.

U.S. OIL COMPANY, The Williamson Company,
and Royal Globe Insurance Company, a foreign
corporation, Defendants-Respondents-Petitioners.

Supreme Court

*No. 84–1880. Argued February 10, 1986.—Decided June 4,
1986.*

(Also reported in 388 N.W.2d 140.)

For the defendants-respondents-petitioners there were briefs by *Robert E. Wrenn, Ellen E. Hill* and *Gibbs, Roper, Loots & Williams,* Milwaukee, and oral argument by *Mr. Wrenn.*

For the plaintiff-appellant there was a brief by *Richard E. Ceman, Jr.,* and *Gray & End,* Milwaukee, and oral argument by *Mr. Ceman.*

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals dated May 6, 1985, which reversed a summary judgment of the circuit court for Milwaukee county, Hugh R. O'Connell, circuit judge. The summary judgment of the circuit court determined that a personal injury action brought by Mary Borello was not timely because the cause of action had accrued more than three years prior to the commencement of the action.[1] Borello's complaint was dismissed. The court of appeals reversed and remanded for further proceedings, because *Hansen v. A. H. Robins Co., Inc.,* 113 Wis. 2d 550, 335

---

[1] " **893.04 Computation of period within which action may be commenced.** Unless otherwise specifically prescribed by law, a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced."

" **893.54 Injury to the person.** The following actions shall be commenced within 3 years or be barred:

" (1) An action to recover damages for injuries to the person.

" (2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another."

N.W.2d 578 (1983), which adopted the discovery rule to determine when a cause of action accrues, was retroactive. The court of appeals stated that, although the injury allegedly caused by the defendant's defective product occurred more than three years prior to the commencement of the action, the cause of the injury, fumes from defendant's furnace, was not "discovered" until late in 1979—within three years of the commencement of the action. It accordingly reversed and ordered a trial. We affirm the decision of the court of appeals.

The questions to be resolved in this case are whether the discovery rule of *Hansen* can or need be applied retroactively and, if applied, whether, under the facts of this case, "discovery" by the plaintiff occurred within three years of commencing the action.

The crucial sequence of events, which is admitted for the purpose of this appeal, is that Mary Borello in December 1977 had the U. S. Oil Company install a furnace, manufactured by the Williamson Company, in her home. Within a few weeks, she complained of a bad odor from the furnace. On December 29, 1977, she wrote to U.S. Oil stating that her previous furnace problems were aggravated, not alleviated, and that "[m]y nose burns, makes me dizzy, headaches are bad and now my chest even hurts. It seems there is a lack of oxygen and I keep opening the windows."

In the letter she wrote that she had the same fumes and odor after the installation of the Williamson furnace that she had before. She wrote that she had masonry experts check her chimney to see if the problem lay there, but no masonry defects were found. Although the defendants would have this court conclude that Borello knew the cause of her injuries even at this

early stage, the most that can be gleaned from the 1977 letter is that she was not able to attribute her symptoms to the old furnace, the new one, or to any furnace but perhaps instead to some other cause.

It is clear, however, because Mary Borello's symptoms were worse after the installation of the furnace and were aggravated during the heating season, when the furnace was used, that almost from that time she believed that the Williamson furnace was the cause of her respiratory problems. Because of the plaintiff's subjective belief that the furnace caused her injuries, the defendants assert that the cause of action against the defendants accrued at a very early date—certainly, they contend, more than three years before the commencement of the action in 1981.

Mary Borello, almost immediately after the furnace installation, sought medical assistance. She told the various physicians she consulted that she thought her ailments were caused by the furnace. However, each of them specifically told her that her complaints could not, with any degree of probability, be attributed to the furnace. She consulted three physicians before Dr. Charles W. Fishburn concluded in late 1979 that her disability was from "metal fume fever" caused by the defective furnace. The physicians she consulted in the interim discounted the furnace as a factor in her complaints and told her at various times that she had coronary sclerotic heart disease, viral infections, indeterminate abdominal pain, and psychoneurosis.

On February 5, 1979, she wrote to the Williamson Company and asked that someone again look at her furnace although, after the last inspection, she had been told there was nothing wrong. She wrote:

"What I do know is that if I continue to be ill from this furnace there will be a Court Case. I cannot continue to live in a house where there is a smokey haze and no oxygen in the room."

She was admitted to St. Elizabeth Hospital that same day with the primary diagnosis of "systemic viral infection."

When she returned to her home upon release from the hospital, she found the flat surfaces of her home covered with a red dust. She claims, although she had previously suspected the furnace as being a cause of her illness, it was not until this event on February 20, 1979, that she knew the furnace to be the cause of her illness.

On March 12, 1979, she consulted with Dr. Vernon Dodson. In her history given at that time to the physician, she said that, after the installation of her new furnace in the winter of 1977–78, she saw red fumes emanating from it. She also recounted the furnace "blow-up" which left a deposit of red dust throughout the house in February of 1979 while she was at the hospital. Nevertheless, that physician, after a statement of Mary Borello's symptoms, said he did not believe that they were related to the furnace episode. He suggested a further workup looking for evidence of allergic reactions.

Finally, in October of 1979, Dr. Fishburn, an occupational medicine specialist, examined Mary Borello and the laboratory findings derived from dust samples from her home. He concluded his report stating:

"In conclusion, a heat exchanger was coated with a coating of material containing significant amounts of zinc and lead which was dispersed in Miss Borello's home. It is a medical probability that

402

a number of the upper respiratory symptoms and fever which Miss Borello experienced in 1978 and 1979 were a result of metal fume fever."

A subsequent medical opinion by Dr. Fishburn stated that, in addition to the exposure to an undue amount of metal oxides in the home related to an installation of a furnace in 1977, "she was exposed to levels of carbon monoxide sufficient to cause headache and nausea" because of "cracks in the heat exchangers" in the furnace.

This action was commenced by the filing of a complaint on November 25, 1981.

It is undisputed that Mary Borello, shortly after the installation of a Williamson furnace in her home, experienced some symptoms of injury. It is also clear that, within a few weeks after the installation, Mary Borello believed, suspected, or had a hunch that her symptoms were caused by the furnace. It is also apparent that repeated inspections of the furnace failed to give her any information that could lead to or confirm a reasoned or objective belief that the furnace was defective. It is equally apparent that in 1977, 1978, and 1979, prior to her consulting Dr. Fishburn, she was repeatedly told by physicians that her symptoms and disabilities could not be the result of the furnace. Other diagnoses were made, attributing the origin of her injuries to factors not related to the furnace—viral infections, allergies, or psychoneurosis.

Accordingly, we are confronted by a situation where a complainant was injured more than three years before the filing of the complaint and almost contemporaneously with that injury formed her own layperson's subjective opinion that the furnace was the cause. Yet, at every turn, she was told by professionals,

who were assumed to be competent to diagnose her ailment and its cause, that the furnace fume problem was irrelevant.

Not until Dr. Fishburn made his diagnosis and findings was there any reasonable likelihood for an objective belief of a cause-and-effect relationship between the injury and the defective furnace.

Our initial inquiry is whether the date of Dr. Fishburn's diagnosis is the date on which Mary Borello "discovered" (knew or ought to have known) the nature of her ailment and that the furnace was the cause. Fishburn's diagnosis and findings were made on October 30, 1979. If this is the date on which "discovery" took place, the complaint filed on November 25, 1981, was timely filed as being within three years of discovery, the date which commenced the running of the period of limitations. The period of limitations, if properly so computed, would not have run until October of 1982.

We first look at the undisputed facts to determine whether, as a matter of law under *Hansen, supra,* the cause of action first accrued on October 30, 1979, when discovery is claimed to have occurred. If that date is found by this court to be the date of discovery, that fact will save Mary Borello's cause of action only if the discovery rule of *Hansen v. A. H. Robins, supra,* decided July 1, 1983, is retroactive in operation or is to be applied to the facts here.

We first must determine whether the date of Dr. Fishburn's diagnosis was the date of "discovery" as that term is used in *Hansen.*[2]

---

[2] We consider this the threshold issue because, despite the *Hansen* language, 113 Wis. 2d at 560, "All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled," that language does not mean that no tort claims accrue

In this instance, we conclude that October 30, 1979, is the date of "discovery," the date on which the cause of action accrued and the period of limitations commenced to run.

A case frequently cited for the pre-*Hansen* rule concerning the accrual of the statute of limitations is *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966). That case specifically rejected the discovery rule urged by the plaintiff therein and held that a cause of action for personal injury accrues on the date of the act of negligence and not on the date when the person discovers that he or she in fact was injured. *McCluskey* was a malpractice case that had its origin on May 1, 1956, when a surgeon negligently left an eight-inch hemostat in the abdomen of McCluskey. There was no pain or any complaint of discomfort prior to 1962; but in May of that year another physician, in the course of an x-ray examination, found the hemostat in McCluskey's abdomen. Although there was no pain or manifestation of injury following the 1956 surgery, this court held that the injury, as a matter of law, occurred on the date of the original negligence in 1956. The court recognized that a discovery rule made sense and in justice ought to be adopted. Nevertheless, this court

hereafter at the time of the negligent act or injury. The statement means merely that not all tort claims will be held to accrue at that time; some will not accrue until "discovery" occurs. Under the law enunciated by *Hansen,* most claims will accrue at the time of the negligent act or injury simply because, in the typical tort, all the elements of an enforceable claim are apparent at approximately that time—the negligent act, the injury, its nature, the cause of injury, and the identity of the defendant. "Discovery" in most cases is implicit in the circumstances immediately surrounding the original misconduct.

concluded that, because the legislature had provided certain exceptions to the rigidly applied date on which tort actions were to accrue, the legislature, by allowing some exceptions, excluded the generalized discovery rule.

The court recognized that in workers compensation cases the legislature by sec. 102.12, Stats., had recognized a discovery rule. Section 102.12 provided and continues to provide that the statute of limitations does not run against an employee until he "knew or ought to have known the nature of his disability and its relation to his employment."

Thus, this court for twenty years has recognized a legislative formulation of the discovery rule which provides that, in addition to the fact or date of injury, an injured person must know or "ought to have known the *nature* of his disability and its *relation to his employment*" (emphasis supplied) before the statute of limitations commences to run.

Were we to apply that statutory formulation of the discovery rule to the facts of this case, the period of limitations would not have commenced to run until Mary Borello knew the nature of her illness—metal fume fever—and the relation or cause of the disability—the alleged negligent construction or assembly of the furnace or that the furnace was "defective." She had no information in respect to the nature of her illness until Dr. Fishburn's diagnosis; and until that diagnosis, she had no reason to know, except for a *post hoc ergo propter hoc* type of logic or hunch that her injury was related to the defective furnace.

Thus, a legislatively approved pattern of the discovery rule dictates that a cause of action does not accrue until the nature of the injury *and* the cause—or

406

at least a relationship between the event and injury—is or ought to have been known to the claimant.

We overruled *McCluskey* and a host of other decisions based on a similar rationale in *Hansen v. A. H. Robins Co., Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983).

In *Hansen,* in May of 1974, a woman was fitted with a "Dalkon Shield" intrauterine device (IUD). Various symptoms manifested themselves four years later in May of 1978.[3] She consulted a physician, Dr. Macken, on June 13 of that year. He erroneously diagnosed her condition as "gastroenteritis" and additionally told her that pelvic inflammatory disease (PID) was unlikely. Later that month on June 26 she sought additional medical advice from a Dr. Fabiny, who correctly concluded that her condition was PID, occasioned by the intrauterine device.

Hansen filed her complaint against A. H. Robins, the manufacturer of the IUD on June 24, 1981. The United States District Court concluded that "under Wisconsin law a personal injury claim accrues and the statute of limitations begins to run when, as a result of a negligent act, the plaintiff sustains some injury—no matter how slight." *Hansen* at 553. The district court concluded that, because Hansen had symptoms and discomfort prior to June 13, 1978 (the date of her consultation with Dr. Macken), ipso facto her cause of action accrued on or before that date and, accordingly, the three-year period of limitations had run by the time the complaint was filed.

---

[3] Under *McCluskey v. Thranow,* of course, the plaintiff would have been precluded by the statute of limitations from bringing suit before her first symptoms of injury were apparent.

Upon appeal of that diversity action governed by Wisconsin law, the United States Court of Appeals for the Seventh Circuit certified the case to this court for our decision in respect to when, under Wisconsin law, the cause of action accrued.

*Hansen* carefully analyzed the policy purposes served by the Wisconsin statute of limitations in respect to personal injuries. (Pp. 558–59.) The court concluded that:

> "[Our] cases demonstrate that using the date of injury [the date of the negligent act or conduct] as the benchmark for accrual of claims can yield extremely harsh results. Indeed, we have recognized the injustice of commencing the statute of limitations before a claimant is aware of his or her right of action." At 556.

The court stated its discovery rule in the following words:

> "In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled." At 560.

It is apparent from the general tenor of *Hansen* that this court did not, by the language "claims shall accrue on the date the injury is discovered," mean the date on which manifestations of the injury shall first appear. Had that been the meaning of this court, the manifestations of which Hansen complained on June

13, 1978, and prior thereto, would have been sufficient to commence the running of the period of limitations. Hansen had sustained an injury by that date, and she knew it. Accordingly, if the mere knowledge of injury would trigger limitations, the finding of the United States District Court should have been allowed to stand. Hence, *Hansen* stands for the proposition that the cause of action does not accrue in a malpractice action until the *nature* of the injury was, or reasonably ought to have been, known to the claimant. Not until Hansen was informed that her condition was PID did she have reason to have that knowledge and only when she had that knowledge could it be related to a *cause*—the Dalkon Shield. *Hansen* stands for the proposition that mere knowledge of the fact of an injury and nothing more will not trigger the commencement of the period of limitations.

Accordingly, in the instant case, the limitations period did not begin to run until Mary Borello knew the nature of her illness—"metal fume fever"—as diagnosed by Dr. Fishburn. Only when a diagnosis was made could her condition be related to a cause. "Discovery" occurred on October 30, 1979.

It becomes important to state with some precision the meaning of the discovery rule adopted by this court in *Hansen.*

The rule in its full meaning, meaning consistent with *Hansen,* was explicated by Chief Justice Kenison of the New Hampshire Supreme Court in *Arthur Raymond v. Eli Lilly and Company,* 117 N.H. 164, 170–71, 371 A.2d 170 (1977):

> "One might read several discovery rule cases and conclude that the courts are applying two substantively distinct rules. In most cases the courts

frame the rule in terms of the plaintiff's discovery of the causal relationship between his injury and the defendant's conduct. In some cases, including *Shillady,* a court will simply state that, under the discovery rule, a cause of action accrues when the plaintiff discovers or should have discovered his injury. Still other courts use both statements of the rule within the same case. The reason for these apparent differences is that in most cases in which the court states the rule in terms of the discovery of the injury, the injury is the kind that puts the plaintiff on notice that his rights have been violated. Thus, there is no reason for the court to express the rule in terms of the discovery of the causal connection between the harm and the defendant's conduct. In a case such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of the courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct."

The New Hampshire case involved a claim of a woman who became blind as the result of using an oral contraceptive manufactured by the defendant, but who, despite the obvious knowledge of injury, did not, until the running of the usual period of limitations, know of the causal nexus between the use of the defendant's drug and her injury.

[1]

The rationale of *Raymond* comports with the facts of *Hansen,* in which our discovery rule was announced. In *Hansen,* the injury, in the sense of pain and discomfort, was known to the plaintiff within the three-year period following the placement of the Dalkon Shield. What was not known was the nature of the injury and its relation to the product of the defendant. *Hansen* impliedly accepts the definition of the discovery rule set forth in the New Hampshire case of *Raymond v. Eli Lilly.* Thus, under Wisconsin law, a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product.[4]

Here, however, the plaintiff, Mary Borello, as the defendants point out and facts reveal, believed, or had a hunch, that the furnace was the cause of her injuries. How strong that hunch was is not subject to quantification. As the facts show, she complained of the furnace almost immediately; yet it was not until after the "explosion" of red dust while she was at the hospital that she stated she "truly believed" that the furnace caused her problems; and it was not until the diagnosis of Dr. Fishburn and his analysis of fume residues, less than three years prior to the filing of the complaint, that

---

[4] It was because of the eventual diagnosis of the nature of Hansen's injury as pelvic inflammatory disease (PID) that a nexus with the placement of a Dalkon Shield could be known to a reasonable degree of probability. The Dalkon Shield is a recognized cause of PID. *See,* W. Duane Todd, M.D., *Disorders Common to Women,* Columbia University College of Physicians and Surgeons—Medical Guide, p. 752 (1986, Crown Publishers).

there could be any objective conclusion reached that the furnace was probably the cause of the disability.

As the defendants herein correctly insist, Mary Borello "believed" that she was injured by the furnace more than three years prior to the commencement of the lawsuit. Does this subjective lay person's belief—when the cause and effect relationship is not readily apparent, as it would be in the typical tort claim, *e.g.*, an automobile accident—mark the accrual of the cause of action, which would bar the claim if not brought to court within the period of limitations? We conclude that it does not.

The opinion of the United States Court of Appeals, in *Williams v. Borden, Inc.*, 635 F.2d 731 (10th Cir. 1980), is instructive and expresses a rationale which we follow. In that case, a diversity action brought under Oklahoma law, the plaintiff was an employee in a meat packing plant. It was her belief that her injury was caused by the use of polyvinyl chloride (PVC) in wrapping meat products. At the time of her first symptoms of injury, there was no medical evidence that the use of this product was a cause of the plaintiff's symptoms. The plaintiff did not bring her suit until after she had "first received 'competent medical advice that her condition was *probably* caused by the PVC fumes . . .'" *Williams v. Borden,* at 733.

The court concluded that the plaintiff was not barred despite her earlier belief that the fumes or smoke from the heated PVC wrappers at her place of employment were the cause of her disabilities—a belief which proved to be correct—and despite that belief having been formed at a time prior to filing the complaint that exceeded the period of limitations. The court held, notwithstanding her prior belief, that there

was no accrual of the cause of action until she received medical confirmation that her hunch, based upon the sequence of smoke exposure and symptoms, was probably correct. That case stands for the proposition that injury and belief of its cause, even if correct, do not in themselves trigger the period of limitations.[5]

*Hamilton v. Turner,* 377 A.2d 363 (Del. Super., 1977), confronted a situation almost identical in its legal ramifications to the instant one. Although the opinion of that court is not precedential, we find its reasoning persuasive. There the plaintiff suffered pain in the uterine area shortly after the placement of an IUD. Upon seeking medical advice, she was told that the IUD was not a cause. The court stated, "Any layman's suspicions which she had were put at rest by the professional advice." At 364. The case is not unlike the one before us, where Mary Borello's suspicions, later vindicated, were put to rest or discounted by the medical advice she received.

---

[5] Defendants argue that this case is a sport, for the cause of the symptoms to a medical probability was unknown at the time the plaintiff formed her belief. We think the rationale of the case is broader than that.

The appeals court reasoned that, under Oklahoma law, the cause of action does not accrue until the plaintiff knows, or as a reasonably prudent person should know, that he or she has a particularly diagnosed problem and that the conduct of the defendant has caused it, *i.e.,* "perceives the role which the defendant has played in inducing that condition." *Williams v. Borden,* at 735. A hunch or a belief that is not presently supportable does not constitute the kind of knowledge that charges a possible plaintiff with the immediate duty to commence an action. Only when there was some medical evidence of a probable link between the PVC fumes and her injuries was she charged with the duty to commence action within the period of limitations.

413

In *Stoleson v. United States,* 629 F.2d 1265 (7th Cir. 1980) the United States Court of Appeals for the Seventh Circuit stated that the subjective belief of the plaintiff that nitroglycerin in her work place was the cause of her heart trouble was insufficient to trigger the commencement of limitations. True, the medical relationship between nitroglycerin exposure and withdrawal was not fully known, nor was it fully knowable at the time the first suspicions of the defendant were voiced.

The case stands for the proposition that the statute of limitations will not commence to run against a claimant merely because that claimant knew she was injured and had a suspicion or a hunch, later confirmed, that defendant's conduct was a cause of the injury. Under the rationale of *Stoleson,* discovery does not occur until there is information available to the claimant of the nature of her injury, the cause of her injury, and the defendant's part in that cause.

A person who has used reasonable diligence to secure medical advice should be given the protection of one who is "blamelessly ignorant" (*Stoleson* at 1269), even though a prior hunch later proved to be correct. We cannot expect the ordinary person to take extraordinary steps to secure a full medical analysis. Here, on the basis of the facts before us, we conclude, as a matter of law, that Mary Borello was reasonably diligent. She did not fail to timely pursue her rights.

Thus, we conclude that the statute of limitations did not commence to run against Borello's claim until she had a basis for objectively concluding that metal fume fever from a furnace installed by the U. S. Oil

414

Company and manufactured by The Williamson Company was probably the cause of her symptoms. At that time, discovery occurred and the cause of action accrued. The statute did not commence to run until the date she received that information from Dr. Fishburn.

To paraphrase the legislatively prescribed words that appear in the workers compensation statute, sec. 102.12, Stats., the statute began to run when the claimant knew or ought to have known the nature of the disability and its relation to the defendant's conduct. But to conclude that the cause of action accrued on the date of "discovery," the date of Dr. Fishburn's diagnosis assumes that the *Hansen* discovery rule is properly applicable.

The defendants pose substantial reasons why the discovery rule should not be applied to this case. The most significant is that to do so would deprive the defendants of the constitutionally protected property right to be free of a claim after the existing statute of limitations has run on that claim. The defendants reason that, in accordance with the holding of *Haase v. Sawicki,* 20 Wis. 2d 308, 121 N.W.2d 876 (1963), the retroactive application of *Hansen* would revive a previously extinguished claim. Section 893.05, Stats., provides that:

> "When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy."

*Haase, supra,* holds that a statute which attempts to revive or reinstate a cause of action that is barred is constitutionally objectionable because a retroactive

extension of the period of limitations after its expiration amounts to a taking of property without due process of law. It follows, defendants argue, that the court cannot constitutionally revive a barred claim by making the discovery rule retroactive. Clearly, once a statute of limitations has run, the party relying on the statute has a vested property right in the statute-of-limitations defense, and new law which changes the period of limitations cannot be applied retroactively to extinguish the right. *Pulchinski v. Strnad,* 88 Wis. 2d 423, 276 N.W.2d 781 (1979); *Lak v. Richardson-Merrell, Inc.,* 100 Wis. 2d 641, 302 N.W.2d 483 (1981).

However, *Lak, supra,* pointed out that the defendant only acquired such a right when the statute had run, but, where a new extended period of limitations was provided by statute in the interim between the accrual of the cause of action and the running of the original period of limitations, the new period would apply. Vesting of the right accrues only when the period of limitations runs in its entirety.

In the instant case the following time sequence appears:

Dec. 1977—Borello's furnace installed

Oct. 1979—Borello's injury diagnosed and cause medically attributed to furnace

Dec. 1980—Statute tolled if period of limitations computed from date of negligent installation or installation of defective furnace

Nov. 1981—Action commenced

Jan. 1983—Action dismissed on statute of limitations

July 1, 1983—*Hansen* pronounces "Discovery Rule"

May 6, 1985—Court of appeals applies *Hansen* rule, concluding that action accrued in October of 1979, date of Dr. Fishburn's conclusions

Thus, if the cause of action did in fact accrue on the date of the furnace installation or very shortly thereafter, when the first signs of respiratory distress appeared, the period of limitations, under the traditional pre-*Hansen* rule would have expired in December of 1980. To now apply a changed rule which extends the running of a period of limitations which would otherwise have expired prior to the adoption of the *Hansen* discovery rule is logically violative of the *Haase* rule.

But *Borello* is unlike *Haase* or *Pulchinski*. In those cases, there was no dispute in respect to when the cause of action accrued. The plaintiffs in each of those cases were clearly placed on notice by readily apparent injuries whose cause was known from the time of the defendants' tortious conduct. There was no doubt that, under the law of limitations that existed at the time of the accrual of the right of action, the plaintiffs were held by law to have known their legal right to redress and the period within which they were required to commence action.

*Borello* is different. Borello has never asserted that the statute's period should be enlarged or extended beyond the three-year period following the accrual of her cause of action. Her contention is simply that the cause of action did not accrue until the day Dr. Fishburn made his findings. She concedes that from that date her action had to be brought within three years or be barred.

*Hansen* itself is such a case as this. In *Hansen,* if the court had concluded the statute had accrued on the

date of the original placement of the IUD, the period of limitations would have run. But *Hansen* conceptually did not look to the discovery rule as reviving a claim that had been barred. Rather, the court took the position that the claim had not accrued until the diagnosis gave information to the plaintiff about the nature of her injury and its causal relationship to the defendant or the defendant's defective device. Thus, as we view causes of action in light of *Hansen,* a cause of action does not accrue until "discovery" if the injury and cause are not apparent from the nature of the original tort. The difference between *Hansen* and *Borello* is simply one of time. In *Hansen,* the delay between the time at which defendant claimed the period of limitations ran and discovery was a matter of two weeks. In this case, it is a matter of two years. Jurisprudentially, the cases are identical.

Defendants in this case conclude that *Hansen* was applied retroactively to the victim of the Dalkon Shield and—properly so they assert—because such retroactivity is in accord with the policy of this court and of courts generally to reward the party successfully asserting a new point of law even if application of the new law is otherwise to be prospective only. Defendants correctly state the policy that this court has sometimes utilized to reward a party pioneering new law. But this court cannot offer such a reward to a successful litigant if to do so would deprive a defendant of a constitutionally vested right. If *Hansen* in fact reinstated a period of limitations that had already run, the A. H. Robins Company was the victim of this court's denial of due process. It is clear, however, that no barred claim was reinstated. Rather, as the *Hansen* court perceived Hansen's cause of action, it never accrued until PID was di-

agnosed. She had no enforceable claim against which the statute of limitations ran until that date. *Hansen* was not retroactive in the sense that it revived a barred claim.

We have, in the first portion of this opinion, extensively discussed the "discovery" of Borello's cause of action and pointed out that she had no enforceable claim until the elements constituting her cause of action were present.

*Hansen,* at 554, cites with approval *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906):

> "Traditionally, under Wisconsin law, ' "[a] cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." ' "

Hansen could not rationally fit her claim or cause of action into the enforceable right concept of *Barry* until the nature of her injury and origin of her complaints was determined by the PID diagnosis. Neither could the claim of Borello fit rationally into even the traditional mode of *Barry* until the Fishburn findings. *Hansen* pointed out that *Barry,* as interpreted by *McCluskey, supra,* and other opinions of this court, simply failed to do justice where the awareness of the components of the cause of action came fully to the attention of the potential claimant only after the period of limitations, dated from the original conduct, had expired. *Hansen* is a gloss upon the *Barry* rule. It seeks to answer the question of when a complaint must be filed when there is a latent injury or there is a claim for an injury that cannot be timely brought to court under the prior limited concept of when an enforceable cause of action accrues. In cases where such problems arise, in-

cluding the instant case, *Hansen* provides a new benchmark for the accrual of a cause of action, the time when the nature of the injury and its cause are discovered.

*Hansen* also points out that defendants should not have been surprised at the announcement of the discovery rule, because, in *Wisconsin Natural Gas v. Ford, Bacon & Davis Construction Corp.*, 96 Wis. 2d 314, 291 N.W.2d 825 (1980), we concluded that a cause of action did not accrue when the first manifestations of injury occurred, and that the claimant had a leeway to not start action until it knew more about the injury and its probable cause. The claim did not accrue when the plaintiff first was aware of a "casing short" in the pipeline. Thus, this court has, over a period of years, developed a more acute appreciation of the plight of a plaintiff who is perhaps injured but whose cause of action is not complete in the sense of there being a potential for a truly enforceable claim under the standards of *Barry*. The statute should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, and the identity of the allegedly responsible defendant. Justice Callow's analysis of the *Barry* rule in *Hansen* does not discard that rule. Rather, it elaborates upon *Barry* to conclude that in other than mine-run tort cases, the date of accrual may be ascertained when the necessary elements are "discovered," even though that discovery date may be beyond the limitations period if measured from the date of the defendant's misconduct.

Until the Fishburn diagnosis, although Borello was diligently asserting her rights, she did not have any information except of the flimsiest nature—a mere inkling or hunch—of a causal relationship between her illnesses and the faulty furnace. She had no reason to

believe that her cause of action had accrued or matured to the extent that a period of limitations ought in reason to be running against her claim. Until the Fishburn report, she had no enforceable claim or an accrued cause of action. Traditionally under Wisconsin law the statute of limitations cannot run on a claim until its accrual—when there is a complete cause of action capable of enforcement. Thus, no vested right could arise in the defendants until three years after discovery—the date of accrual. The claim of constitutional deprivation is illusory.

■

As a final point, we conclude that no problems of judicial administration arise because we hold that personal injury actions may be filed any time the cause of action is commenced within three years of its accrual by discovery.

We see no compelling judicial reasons to deter this court from applying the *Hansen* analysis to causes of action that have accrued prior to the mandate in *Hansen,* and such actions are not barred by the statute of limitations if the period of limitations has not expired subsequent to the discovery or accrual of the cause of action.

*Hansen* does not state a new concept of liability, as did the cases abrogating immunities. At the most, *Hansen* is a statement of our more acute understanding of a cause of action. Our application of *Hansen* is not retroactive in the usual sense. We merely look at the cause of action in a new light that is more likely to produce a just result. In certain cases, as discussed in *Hansen,* we identify a different event, discovery, as the event that triggers the period of limitations. We

421

have retained the enforceable right concept of *Barry,* but measure it in a more just and equitable manner.

Chief Judge John W. Reynolds in *Reimer v. Owens-Corning Fiberglass Corp.,* 576 F. Supp. 197 (D.C.E.D. Wis., 1983), pointed out in detail why the application of *Hansen* to claims that are deemed to have accrued by "discovery" prior to the *Hansen* mandate is appropriate.

Chief Judge Reynolds wrote that the application of *Hansen* to claims prior to the *Hansen* mandate would not defeat the interests of persons who "relied" upon the former rule of law, because such a factor is an important consideration only "where the rule of law subject to change is clear and of broad applicability and is likely the subject of numerous suits pending at the time the change was effected." At 202.

Chief Judge Reynolds points out that the rule, *e.g.,* the rule when a cause of action accrued, was far from settled, that the *Hansen* issues could arise only in a limited number of situations, and *Hansen* is not a change in a rule of law upon which a prudent person would rely in the sense that there was reliance upon the rules of governmental, charitable, or religious immunity. He points out that "a rational businessperson would not decline to obtain adequate insurance coverage or discard mitigating evidence in reliance on the statutory ambiguity resolved in *Hansen.*" At 202.

He also points out that the application of *Hansen* would not unduly burden the administration of justice. He wrote at 202–03:

> "The retroactive application of *Hansen* will not unduly burden the administration of justice. Claims will not be rejuvenated that were prejudicially dismissed under the former interpretation of

§ 893.205(1). Insofar as those claims were finally adjudicated by courts of competent jurisdiction, they are now *res judicata* and not subject to collateral attack, however erroneous the *ratio decidendi* may now appear to be. *See Kriesel v. Kriesel,* 35 Wis. 2d 134, 150 N.W.2d 416 (1967). *Hansen* resolves the ambiguity in a limited situation, that is, where an injury is medically diagnosable but not yet reasonably discoverable by the injured party. *Hansen* does not do away completely with the limitations period; it requires that the plaintiff file suit within three years of the date upon which the injury became reasonably discoverable. Therefore, to give *Hansen* retroactive effect would not subject Wisconsin courts to an unmanageable flood of litigation.

"Given that no final judgment has been entered in this case, I conclude that the Seventh Circuit's holding in *Neubauer* is superseded by the Wisconsin Supreme Court's holding in *Hansen.* Moreover, I conclude that Wisconsin courts would give retroactive effect to *Hansen.* Because *Hansen* controls this case, and because the movants have not established that they are entitled to judgment as a matter of law under *Hansen,* the motions for summary judgment must be denied."

We find the reasoning of Chief Judge Reynolds persuasive and conclude that no deleterious effect on the management of the courts or a burgeoning volume of litigation would result by the application of *Hansen* to the facts of this case and cases of a like nature to which the discovery rule may be applied.

Accordingly, we conclude that *Hansen* may properly be applied to the instant case to determine whether and when the cause of action had accrued. Because the cause of action did not accrue until Borello

had information to a reasonable probability of the nature of her ailment and the factual information to a reasonable probability that the defendant's furnace was the cause of her injuries, the cause of action had not accrued prior to Fishburn's report, although Borello manifested symptoms of injury and had a subjective belief that the furnace was their cause. Because the period of limitations which commenced on October 30, 1979, had not run to completion on the date she commenced her action, no question arises in respect to an unconstitutional deprivation of the defendants' right to be free of the claim for Borello's injuries. Under *Hansen,* which we find appropriate to be applied, the period of limitations had not run at the time the action was commenced. We affirm the court of appeals and remand the cause to the trial court for further proceedings. Borello's cause of action, which accrued on October 30, 1979, was not barred by the statute of limitations.

*By the Court.*—Decision of the court of appeals affirmed and cause remanded to the circuit court for further proceedings.