Quentin MERACLE and Nancy Meracle, Plaintiffs-Appellants,

v.

CHILDREN'S SERVICE SOCIETY OF WISCONSIN, a Wisconsin corporation and American Home Assurance Co., a foreign corporation, Defendants-Respondents.†

Court of Appeals

*No. 87–0457. Submitted on briefs November 5, 1987.—Decided February 10, 1988.*

(Also reported in 421 N.W.2d 856.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiffs-appellants the cause was submitted on the briefs of *Habush, Habush & Davis, S.C.,*

by *Charles F. Stierman* and *Virginia M. Antoine,* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Frisch, Dudek and Slattery, Ltd.,* by *Stephen P. Juech* and *Jay R. Starrett,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J. Quentin and Nancy Meracle (the Meracles) appeal from a summary judgment granted to Children's Service Society of Wisconsin (CSS) and its insurer, American Home Assurance Company, dismissing the Meracles' cause of action because it was time barred under sec. 895.54(1), Stats.[1] We reverse.

In September 1978, the Meracles applied with CSS, an adoption agency, seeking to adopt a child. The Meracles specifically requested that the child be healthy. In October of 1979, Erin, a twenty-four-month-old girl, was placed in the Meracles' home and on November 12, 1980, the adoption was completed. Prior to the completion of the adoption, an employee of CSS had told the Meracles that Erin's paternal grandmother had died of Huntington's Disease, a fatal genetic disorder. The employee assured the Meracles, however, that Erin's father had tested negatively for the disease and that, accordingly, Erin had no chance of affliction.

On February 8, 1981, the Meracles saw a television show, *60 Minutes,* which ran a segment on Huntington's Disease. The segment, entitled *Time Bomb,* stated that there was no test to determine

---

[1]Section 893.54(1), Stats., states: "The following actions shall be commenced within 3 years or be barred: (1) An action to recover damages for injuries to the person."

whether someone had the disease and that a child whose parent had the disease had a 50% chance of developing it. From this program, the Meracles discovered that the CSS employee had misrepresented the risk of Erin developing the disease. Their discovery of the actual risk caused them great emotional trauma.

In September 1984, Erin was diagnosed as having Huntington's Disease. On September 25, 1985, the Meracles filed suit in the circuit court for Milwaukee county alleging that CSS negligently placed Erin with them and misrepresented to them the chance of Erin developing the disease. The Meracles sought damages for loss of society, severe emotional pain and suffering, loss of wages, loss of enjoyment and future medical expenses.

The trial court, on CSS's motion for summary judgment, held that the Meracles' cause of action accrued in early 1981 "when they first learned that their adopted daughter was at significant risk of getting Huntington's Disease." The court held that the Meracles' claim was time barred under sec. 893.54(1), Stats., because the claim was filed more than three years after the cause of action accrued. The Meracles appeal from this holding.

■■

The question of the applicability of a statute of limitations to an undisputed set of facts is a question of law.[2] As such, we decide it without deference to the trial court's decision.[3]

The Meracles argue that their cause of action did not accrue until Erin had been diagnosed in September of 1984. Up until that time, they argue, any claim

[2]*Lavine v. Hartford Accident & Indem. Co.,* 140 Wis. 2d 434, 438, 410 N.W.2d 623, 625 (Ct. App. 1987).
 [3]*Id.*

for damages was merely speculative since there was only a 25% chance that Erin would develop Huntington's Disease.[4] CSS argues, however, that the Meracles sustained compensable injury in early 1981 when they discovered, to their great shock and distress, that Erin was substantially at risk of developing Huntington's Disease. CSS argues that the costs of future medical expenses as well as past and future pain and suffering could have been determined by a jury at that time.

■

This case sets forth a question concerning the application of the discovery rule set forth by the Wisconsin Supreme Court in *Hansen v. A.H. Robins Co.*[5] and *Borello v. U.S. Oil Co.*[6] In *Hansen,* the supreme court stated:

> In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.[7]

---

[4]Since Erin's father had a 50% chance of developing the disease and Erin had a 50% chance if her father developed it, Erin had a 25% chance of eventually developing the disease.
[5]113 Wis. 2d 550, 335 N.W.2d 578 (1983).
[6]130 Wis. 2d 397, 388 N.W.2d 140 (1986).
[7]*Hansen,* 113 Wis. 2d at 560, 335 N.W.2d at 583.

*Borello* interprets the *Hansen* decision to stand for the proposition that the "mere knowledge of the fact of an injury and nothing more will not trigger the commencement of the period of limitations."[8] Rather, in order for the statute to begin to run, the plaintiff must have information of the nature of his injury, the cause of the injury, and the defendant's connection with that cause.[9]

In the present case, two separate claims must be analyzed in light of the time limitation of sec. 893.54(1), Stats. The first claim is one for emotional distress and pain and suffering for the *fear* on the part of the Meracles that Erin might contract Huntington's Disease. The second claim is one for medical expenses and damages for emotional distress not for the fear of adopting a child with Huntington's Disease, but for adopting a child who actually has developed the disease.[10]

■

With regard to the first claim, our supreme court has held that the *fear* of a medical consequence may be reasonably certain and therefore compensable even though a physician "cannot testify to a reasonable degree of medical probability that the consequence feared will occur."[11] Thus, if the Meracles could have sustained their burden of proof that they had suffered damages due to emotional distress caused by learning that Erin was substantially at risk of contracting

---

[8]*Borello,* 130 Wis. 2d at 409, 388 N.W.2d at 145.

[9]*Id.* at 414, 388 N.W.2d at 147.

[10]While the Meracles include both of these injuries in one claim for relief in their complaint, we separate them for purposes of our analysis.

[11]*Brantner v. Jenson,* 121 Wis. 2d 658, 666, 360 N.W.2d 529, 533 (1985).

Huntington's Disease, they could have recovered for those damages. This claim, however, accrued in early 1981 when the Meracles viewed *Time Bomb* and thereby knew the nature of their injury, its cause, and CSS's connection with that cause. Therefore, the statute of limitations for that claim ran out in early 1984. The trial court correctly dismissed this portion of the Meracles' complaint.

With respect to the second claim for damages, the trial court held that since evidence was introduced showing that the costs of long-term care for Huntington's Disease patients can amount to $200,000 over fifteen years, "a jury charged with assessing those items of damage in 1981 would have had no more a difficult task than juries commonly face in evaluating future, and as yet inchoate, complications in myriad personal injury actions." Therefore, the trial court held that this claim also accrued in early 1981 and was time barred by sec. 893.54(1), Stats. We disagree.

The trial court stated in its ruling that "the plaintiffs here knew of the injury that forms the gravaman of their complaint in early 1981, namely the adoption of a child substantially at risk to Huntington's Disease." However, as we have stated, the gravamen of the Meracles' second claim is not the adoption of a child at *risk* of contracting the disease, but the adoption of a child who has developed the disease.

The *nature* of the injury in this second claim is different than that of the first. The injury is no longer the fear that Erin will develop Huntington's Disease. Rather, given that Erin has now been diagnosed as having the disease, the injury consists of medical and other expenses and damages which the Meracles will

endure because CSS negligently placed with them an unhealthy child. None of these expenses or damages could have been recovered in early 1981 when the Meracles had only a fear that Erin would develop Huntington's Disease.[12] Since the *nature* of these injuries could not have been known until Erin's diagnosis, discovery of this claim for relief did not occur and the statute of limitations did not begin to run until September 27, 1984.[13] Thus, the trial court improperly dismissed the Meracles' claim for damages incurred due to Erin actually having developed Huntington's Disease.

CSS argues that even if the statute of limitations does not bar the Meracles' cause of action, public policy requires that the action be dismissed. Public policy will preclude recovery despite a complete and direct chain of causation between conduct and harm when:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allow-

---

[12]In order to recover for these future expenses and damages, the Meracles would have had to show by expert testimony to a reasonable medical certainty that these damages would be incurred. *See Dumer v. St. Michael's Hosp.,* 69 Wis. 2d 766, 776, 233 N.W.2d 372, 377 (1975). Since Erin had only a 25% chance of developing the disease, any claim against CSS for these damages would have been dismissed as speculative.

[13]*See Borello,* 130 Wis. 2d at 414, 388 N.W.2d at 147.

ance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.[14]

We see nothing in this case prompting the use of public policy to defeat the Meracles' claim.

*By the Court.*—Judgment reversed and cause remanded.

---

[14]*Walker v. Bignell,* 100 Wis. 2d 256, 265, 301 N.W.2d 447, 453 (1981).