Jimetta CLAYPOOL, Marvin Claypool and Jennifer Claypool, Plaintiffs-Petitioners,

v.

Mark R. LEVIN, M.D. and Wisconsin Patients Compensation Fund, Defendants-Respondents-Petitioners,

AA INSURANCE COMPANY and Columbia Hospital, Defendants,

Russell GOLDSTEIN and Wisconsin Lawyers Mutual Insurance Company, Defendants-Appellants.

Supreme Court

*No. 94–2457. Oral argument October 29, 1996.—Decided May 9, 1997.*

(Also reported in 562 N.W.2d 584.)

For the plaintiffs-petitioners there were briefs by *Ted M. Warshafsky, Edward E.Robinson* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.,* Milwaukee and oral argument by *Ted M. Warshafsky.*

For the defendants-respondents-petitioners there were briefs by *Michael J. Pfau, Susan R. Tyndall* and *Hinshaw & Culbertson,* Milwaukee and oral argument by *Susan R. Tyndall.*

For the defendants-appellants there was a brief by *Terry E. Johnson, Peter F. Mullaney* and *Peterson, Johnson & Murray, S.C.,* Milwaukee and oral argument by *Terry E. Johnson.*

¶ 1. JON P. WILCOX, J. This case is before the court on petitions for review filed by Mrs. Jimetta Claypool, Mr. Marvin Claypool, and Ms. Jennifer Claypool (collectively the "Claypools"), and Dr. Mark Levin, M.D. The petitioners seek review of a published court of appeals decision, *Claypool v. Levin,* 195 Wis. 2d 535, 536 N.W.2d 206 (Ct. App. 1995), that reversed a circuit court judgment. The Circuit Court for Milwaukee County, William D. Gardner, Judge, granted summary judgment to Dr. Levin for the Claypools' medical malpractice claim against him on the grounds that the statute of limitations had expired. The court of appeals reversed the decision of the circuit court and remanded for further proceedings. We reverse the decision of the court of appeals.

¶ 2. The issue on review is when, pursuant to the medical malpractice statute of limitations, Wis. Stat. § 893.55(1)(b) (1993–94),[1] Mrs. Claypool discovered or

---

[1] Unless otherwise indicated, all future statutory references are to the 1993–94 volume. Wis. Stat. § 893.55(1) provides in part:

in the exercise of reasonable diligence should have discovered her injury. We hold that for purposes of Wis. Stat. § 893.55(1)(b) Mrs. Claypool did discover or in the exercise of reasonable diligence she should have discovered her injury at some point in March or early April of 1989. We also hold that once an injury is discovered it cannot be "undiscovered." Thus, the Claypools' claims against Dr. Levin are barred by the statute of limitations.

¶ 3. The material facts necessary for our determination are undisputed. On March 6, 1989, Mrs. Claypool was hospitalized on an emergency basis at Columbia Hospital. At the time she was hospitalized, she was very ill and her symptoms included vision problems. Between March 6 and April 6, 1989, she was treated by the defendant, Dr. Levin, an ophthalmolo-

---

**(1)** Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

**(2)** If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovered the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

**(3)** When a foreign object which has no therapeutic or diagnostic purpose or effect has been left in a patient's body, an action shall be commenced within one year after the patient is aware or, in the exercise of reasonable care, should have been aware of the presence of the object or within the time limitation provided by sub. (1), whichever is later.

287

gist. While Mrs. Claypool was at the hospital, Dr. Levin treated her eyes with antibiotics and an intravitreous injection. During this period, her vision deteriorated until she became permanently blind on March 8, 1989.

¶ 4. On April 10, 1989, four days after her release from the hospital, Mrs. Claypool and her husband retained Attorney Russell Goldstein to investigate whether her blindness was attributable to negligence of the health care providers including Dr. Levin. Goldstein had the Claypools sign a retainer agreement and medical authorizations. Goldstein subsequently obtained several pages of Mrs. Claypool's hospital records, but did not have them reviewed by an expert.

¶ 5. Although Goldstein failed to contact the Claypools, Mr. Claypool called him regarding the status of the case on two or three occasions between April 10, 1989, and July of 1992. On each occasion Goldstein told Mr. Claypool that he was "checking out" the case. Sometime prior to 1992, while Mr. Claypool was on jury duty at the Milwaukee County Courthouse, he encountered Goldstein and inquired about the status of the case. Goldstein advised Mr. Claypool that the doctor with whom he had consulted had concluded that there was no cause of action. Mr. Claypool subsequently relayed this information to his wife.

¶ 6. Sometime more than three years after Mrs. Claypool was treated by Dr. Levin, Mr. Claypool was asked by a co-worker about his wife's condition. When Mr. Claypool responded that she had lost her vision, the co-worker recommended that the Claypools contact the Warshafsky law firm. In the summer of 1993, Mrs. Claypool contacted attorneys from the Warshafsky law firm who subsequently advised her that she did have a viable medical malpractice claim against Dr. Levin.

288

¶ 7. Four and one-half years after Dr. Levin's last treatment of Mrs. Claypool, on October 14, 1993, the Claypools, now represented by the Warshafsky law firm, commenced this lawsuit alleging that both Dr. Levin and Goldstein were negligent. The plaintiffs sought recovery from Dr. Levin if the statute of limitations had not expired, or, in the alternative, from Goldstein if the statute of limitations had expired.

¶ 8. Dr. Levin subsequently filed a motion for summary judgment asserting that the Claypools' claims were time barred under Wis. Stat. § 893.55(1). Goldstein opposed the motion asserting that any failure on his part to exercise due diligence should not be imputed to the Claypools. In granting Dr. Levin's motion for summary judgment, the trial court concluded:

> The only issue before this Court involves the discovery rule. It is Goldstein's position that discovery did not occur until the attorneys subsequently retained by the Claypools advised the Claypools that they had a viable claim for medical negligence. This position flies in the face of reason, common sense and the law. This court concludes that the undisputed facts can lead to but one reasonable inference, that is, in the exercise of reasonable diligence plaintiffs should have discovered the probable cause of the injury within a reasonably short period of time after the injury. The injury was immediately known and the potentially responsible health care providers were known almost immediately after the injury. Counsel was retained within weeks of the injury to conduct an investigation regarding the potential cause or causes of the injury.

¶ 9. Goldstein appealed and the court of appeals reversed. In addressing the conclusion of the circuit court, the court of appeals stated:

> Thus, the trial court's conclusion that "the only reasonable inference" is that the Claypools "possessed sufficient information within a relatively short span of time from the injury to form an objective belief that Dr. Levin's treatment was the cause of the injury" was an accurate expression of the Claypools' understanding at the point at which they presented their case to Goldstein. That, however, does not logically end the analysis because the Claypools' "discovery" as a matter of law was not necessarily locked in time by their initial belief given the subsequent events. To conclude otherwise would be to ignore the "ordinary person" standard of *Borello* and require the claimant "to take extraordinary steps to secure a full medical analysis" beyond whatever counsel has obtained.

*Claypool*, 195 Wis. 2d at 551–52, citing *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 414, 388 N.W.2d 140 (1986). The court of appeals went on to hold that although Dr. Levin was not entitled to summary judgment, there was not sufficient evidence to conclude that, as a matter of law, the Claypools did not discover their cause of action until they received advice from the Warshafsky law firm.

¶ 10. This court must now determine whether it was appropriate for the trial court to grant Dr. Levin's motion for summary judgment. We review a grant of summary judgment by applying the same standards used by the circuit court. *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 630, 547 N.W.2d 602 (1996). These standards are set forth in Wis. Stat. § 802.08(2).

290

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Linville v. City of Janesville*, 184 Wis. 2d 705, 714, 516 N.W.2d 427 (1994). Whether Dr. Levin is entitled to summary judgment depends upon whether the Claypools' claims against Dr. Levin are barred by the statute of limitations.

¶ 11. The relevant statute of limitations, Wis. Stat. § 893.55(1), provides that claims against health care providers must be brought within three years from the date of injury or within one year from the date that the injury was discovered or in the exercise of reasonable diligence the injury should have been discovered. The summons and complaint in this case were filed on October 14, 1993. As Dr. Levin's treatment of Mrs. Claypool occurred in March and April of 1989, the Claypools' claim was not brought within three years of the date of injury. Thus, whether the claims against Dr. Levin are barred by the statute of limitations depends upon whether Mrs. Claypool either discovered or in the exercise of reasonable diligence should have discovered the injury at sometime before October 14, 1992.

¶ 12. We must first determine what constituted discovery for purposes of Wis. Stat. § 893.55(1). In making this determination, we must look both at the language of the statute and at relevant case law. Goldstein argues that this court's decision in *Borello* and the definition of the discovery rule detailed in that case control the outcome of the present case. To adequately address this contention, we must consider the history of the discovery rule in Wisconsin.

¶ 13. Prior to 1983, this court consistently declined to adopt the discovery rule on the basis that

291

such a change in the law should be enacted by the legislature. *See Peterson v. Roloff*, 57 Wis. 2d 1, 203 N.W.2d 699 (1973); *Olson v. St. Croix Valley Memorial Hospital*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972); *Holifield v. Secto Industries, Inc.*, 42 Wis. 2d 750, 168 N.W.2d 177 (1969); *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966); *Reistad v. Manz*, 11 Wis. 2d 155, 105 N.W.2d 324 (1960). The facts of *McCluskey* are representative of those pre-discovery rule cases.

¶ 14. In *McCluskey*, the defendant doctor performed surgery on the plaintiff on May 1, 1956. *McCluskey*, 31 Wis. 2d at 248. An x-ray was taken on May 4, 1956, by another doctor who prepared a report for the defendant doctor. *Id.* This report made no mention of foreign objects in the abdominal area. *Id.* Additionally, the plaintiff apparently felt no abnormal pain after the operation; however, on June 13, 1962, when the defendant doctor saw for the first time the x-ray taken on May 4, 1956, it revealed that a hemostat was in the plaintiff's body. *Id.* The defendant doctor shortly thereafter informed the plaintiff of the situation and on January 6, 1965, the instrument was removed. *Id.* The plaintiff commenced the action against the defendant doctor on April 28, 1965, alleging, among other things, that the defendant doctor was negligent in failing to remove the hemostat. *Id.* The applicable statute of limitations was three years. *Id.* at 249–50. Despite the meritorious claim presented to this court in *McCluskey*, this court concluded that such a change in the statute of limitations should be made, not by the court, but by the legislature.[2] *Id.* at 250–51.

¶ 15. In 1979, the legislature responded by adopting a discovery rule for medical malpractice

[2] In another pre-discovery rule case, this court strongly urged the legislature to amend the statute of limitations:

claims. Wis. Stat. § 893.55(1)(b). It is the interpretation of this statutory discovery rule that is at issue in this case. The statute provides:

> **(1).** . .an action to recover damages for injury. . .shall be commenced within. . .:
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

Wis. Stat. § 893.55(1).[3] However, this discovery rule did not apply to non-medical malpractice tort claims.

> We conclude that this is a matter peculiarly for legislative determination. Because of the numerous cases in which the present three-year requirement for commencing an action by a party who is the victim of medical malpractice is too short, we strongly recommend to the legislature that the basic three-year statute for negligence actions due to medical malpractice be amended.

*Peterson v. Roloff*, 57 Wis. 2d 1, 7, 203 N.W.2d 699 (1973).

[3] This law was part of a comprehensive statute of limitations revision law that was conceived by the Judicial Council Committee. The drafting record for this law reveals that the medical malpractice section was designed to address the outcome of "Olson v. St. Croix." *See Olson*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972).

In *Olson*, the plaintiff alleged that she was given the wrong type of blood in a blood transfusion that she received in 1962. *Olson*, 55 Wis. 2d at 630. On December 1, 1966, the plaintiff gave birth to a child that died seven hours later. *Id.* On December 9, 1969, she delivered a stillborn child. *Id.* The plaintiff alleged that the deaths of the children were the result of negligence by the hospital and that she did not discover that the wrong type of blood had been given to her until the still birth of the second child. *Id.* at 630–31. The relevant statute of limitations provided that the action must be brought within three years of the injury. *Id.* at 631. This court first concluded that the

¶ 16. Subsequent to the legislature's adoption of Wis. Stat. § 893.55(1), this court recognized a common law discovery rule for those tort cases not already covered by the statutory discovery rule. This common law discovery rule was first recognized by this court in *Hansen v. A.H. Robins Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983). In *Hansen*, the plaintiff commenced a suit on June 24, 1981, against the manufacturer of a "Dalkon Shield" intrauterine device that was inserted into her uterus on May 28, 1974. *Id.* at 553. In May of 1978, the plaintiff began to suffer symptoms and sought the advice of a doctor on June 13, 1978. *Id.* The doctor failed to accurately diagnose the problem. *Id.* On June 26, 1978, the plaintiff sought the advice of another doctor who correctly diagnosed the problem. *Id.* at 553. The applicable statute of limitations in *Hansen* provided that the action had to be brought within three years of the date on which the action had accrued. *Id.* at 553–54.

¶ 17. The *Hansen* court recognized that this court had previously held that a cause of action accrues on the date of injury. *Id.* at 554. The court then noted that "using the date of injury as the benchmark for accrual of claims can yield extremely harsh results." *Id.* at 556. The court also acknowledged that the legislature had adopted a discovery rule for medical malpractice cases, Wis. Stat. § 893.55, but noted that a general discovery rule did not exist:

alleged injury occurred at the time of the blood transfusion. *Id.* at 632–33. The court then declined to adopt the discovery and thus held that suit was barred by the statute of limitations. *Id.* at 633–34. In so holding this court stated: "While, as we pointed out in *McCluskey*, there may be merit to the discovery rule, the state of the facts presented herein is not conducive to modification of the present holdings of this court." *Id.* at 633.

The legislature has not taken similar ameliorative action for tort claims outside the realm of medical malpractice. We believe the time has come to consider adoption of the discovery rule for such claims.

*Id.* at 557. The *Hansen* court also made clear that the discovery rule it was adopting was distinct from the one that the legislature had already adopted in Wis. Stat. § 893.55:

In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions *other than those already governed by a legislatively created discovery rule*. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.

*Id.* at 560 (emphasis added).

¶ 18. In reaching the decision to adopt a common law discovery rule in *Hansen*, this court relied heavily on public policy considerations. The *Hansen* court identified two conflicting public policies associated with the discovery rule: "(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained." *Id.* at 558, quoting *Peterson v. Roloff*, 57 Wis. 2d 1, 6, 203 N.W.2d 699 (1973). In deciding that the discovery rule did not severely infringe on the public policy of discouraging stale and fraudulent claims, this court stated:

Although the discovery rule will allow actions to be filed more than three years after the date of injury, it will not leave defendants unprotected from stale and fraudulent claims. Under the rule a claim

accrues when the injury is discovered or reasonably *should* have been discovered. Therefore, it does not benefit claimants who negligently or purposefully fail to file a timely claim.

*Id.* at 559. This passage illustrates that the court was attempting to strike a balance between the conflicting public policies rather than completely subordinating the public policy of discouraging stale and fraudulent claims. The court explained the significance of the public policy of allowing meritorious claims as follows:

It is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. Although theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress. Under these circumstances the statute of limitations works to punish victims who are blameless for the delay and to benefit wrongdoers by barring meritorious claims. In short, we conclude that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.

*Id.* From this language it is apparent that the common law discovery rule was intended to introduce practical considerations into the operation of the relevant statutes of limitation.

¶ 19. The application of the *Hansen* common law discovery rule was further explored by this court in *Borello*. In that case, the plaintiff had a furnace installed in her home in December of 1977. *Borello*, 130

Wis. 2d at 400. In a December 19, 1977, letter to the furnace company, Mrs. Borello complained of physical symptoms. In describing the letter, the *Borello* court stated, "the most that can be gleaned from the 1977 letter is that she was not able to attribute her symptoms to the old furnace, the new one, or to any furnace but perhaps instead to some other cause." *Id.* at 401. During this same period, the plaintiff sought medical advice and was told by various physicians that her ailments were not caused by the furnace. *Id.* On February 5, 1979, the plaintiff entered the hospital where she was misdiagnosed with a systemic viral infection. *Id.* at 402. When she returned home from the hospital on February 20, 1979, the flat surfaces of her home were covered with a red dust. *Id.* On March 12, 1979, the plaintiff consulted with another physician who wrongly determined that her symptoms were not related to the furnace. *Id.* Finally, on October 30, 1979, a different physician concluded that the furnace was the source of the plaintiff's ailments which were identified as metal fume fever. *Id.* at 402–03.

¶ 20. On November 25, 1981, the plaintiff commenced an action against the furnace company. *Id.* The statute of limitations applicable to the plaintiff's claims was the same three-year statute of limitations that the court considered in *Hansen*. Applying the common law discovery rule adopted in *Hansen*, this court held that the cause of action did not accrue until she was diagnosed with metal fume fever on October 30, 1979. *Id.* at 414–15. The *Borello* court stated:

> [T]he statute of limitations did not commence to run against [the plaintiff's] claim until she had a basis for objectively concluding that metal fume fever from a furnace installed by the U.S. Oil Company

297

and manufactured by The Williamson Company was probably the cause of her symptoms.. . .the statute began to run when the claimant knew or ought to have known the nature of the disability and its relation to the defendant's conduct.

*Id.*

¶ 21. Goldstein argues that this case is governed by the holding in *Borello*. Goldstein further asserts that Mrs. Claypool, like the plaintiff in *Borello*, did not have an objective basis for concluding that Dr. Levin was responsible for Mrs. Claypool's blindness until she consulted the Warshafsky law firm. However, in presenting this argument, Goldstein fails to consider the importance of *Clark v. Erdmann*, 161 Wis. 2d 428, 468 N.W.2d 18 (1991), in which this court directly considered the relevance of the *Borello* holding in determining when discovery occurs pursuant to Wis. Stat. § 893.55(1).[4]

---

[4] In relying on *Borello*, Attorney Goldstein also fails to consider this court's most recent description of the common law discovery rule. *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995). In that case, the plaintiff brought suit for damages stemming from alleged sexual assault by a priest that had occurred in the 1950s. *Id.* at 307. Although the plaintiff did not commence her action until November 12, 1992, she argued "that her claim [was] saved by the discovery rule because 'she [had] suppressed and [was] unable to perceive the existence, nature or cause of her psychological and emotional injuries until approximately April, 1992.' " *Id.* at 315. This court rejected her argument:

> We conclude that Ms. Pritzlaff's claim does not qualify for the tolling of the statute of limitations provided by the discovery rule because Ms. Pritzlaff knew of all of the elements of her underlying claim against Fr. Donovan, at the latest, by the time the relationship between the two ended.

*Id.* The *Pritzlaff* court further stated:

¶ 22. In *Clark*, the plaintiff argued that "under [*Borello*] no 'discovery' [had taken] place for purposes of sec. 893.55(1)(b), and the statute of limitations did not begin to run, until July 1988, after [the] action was commenced, when she [claimed] first to have received 'objective verification' of her injury and its cause . . ." *Id.* at 444–45. The defendant, Dr. Erdmann, argued that based on *Fritz v. McGrath*, 146 Wis. 2d 681, 431 N.W.2d 751 (Ct. App. 1988), and *Kempfer v. Evers*, 133 Wis. 2d 415, 395 N.W.2d 812 (Ct. App. 1986), there was a reasonable likelihood that the plaintiff had an objective belief of the injury and its cause such that plaintiff discovered her injury no later than 1985. *Clark*, 161 Wis. 2d at 447. This court agreed with Dr. Erdmann:

> *While Borello is applicable to medical malpractice actions, it should not be read to say,* as Clark asserts, that an "objective belief" sufficient to constitute "discovery" requires a plaintiff "officially" be informed by an expert witness of her injury, its cause or the relation between the injury and its cause.

*Id.* at 448 (emphasis added). Thus, in *Clark*, this court made clear that the same analysis should be used to determine when discovery occurs under the statutory discovery rule contained in Wis. Stat. § 893.55(1)(b)

[T]he discovery rule is so named because it tolls the statute of limitations until the plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered actual damage due to wrongs committed by a particular, identified person. Until that time, plaintiffs are not capable of enforcing their claims either because they do not know that they have been wronged or because they do not know the identity of the person who has wronged them. Accordingly, " '[d]iscovery' in most cases is implicit in the circumstances immediately surrounding the original misconduct."

(citations omitted) *Id.* at 315–16.

and the common law discovery rule established in *Hansen*. However, the *Clark* court also clarified how *Borello* should be read and thus how such a determination should be made.

¶ 23. This court stated in *Clark* that discovery occurs when the "plaintiff has information that would constitute the basis for an objective belief of her injury and its cause. . . ." *Id.* In other words, discovery occurs when a potential plaintiff has information that would give a reasonable person notice of her injury and its cause. This does not mean that if there is more than one reasonable cause of the injury that discovery cannot occur. This standard also does not require that the potential plaintiff know with certainty the cause of her injury.

¶ 24. The *Clark* decision also suggests that the question of when Mrs. Claypool's discovery should have occurred does not hinge on the actions of her attorney in evaluating the case:

> We thus approve of the language of the court of appeals in *Fritz* and *Kempfer*. While an unsubstantiated lay belief is not sufficient for discovery to occur, the existence of a reasonable likelihood for an objective belief as to an injury and its cause does not require any sort of formalistic approach as is suggested by Clark. If a plaintiff has information that would constitute the basis for an objective belief of her injury and its cause, she has discovered her injury and its cause. *It does not matter whether her objective belief resulted from information "officially" obtained from an expert witness. Nor, as Fritz and Kempfer suggest, does it necessarily always matter whether the objective belief resulted at all from information obtained from any "expert" person.*

300

*Id.* (emphasis added). The language of *Kempfer* approved of in *Clark* further indicates that a valid legal opinion is not necessary for discovery to occur:

> Accrual is based on the person's knowledge that he or she has been injured. [*Hansen*, 113 Wis. 2d at 539]. It is true that when the source of injury is unclear and the injured person has exercised reasonable diligence, the time of accrual may be extended until a causal connection can be established. [citing *Borello*, 130 Wis. 2d at 411]. However, neither *Hansen* nor *Borello* provide any authority for the proposition that the cause of action cannot accrue until the injured person is advised of his or her legal rights.

*Id.* at 447, citing *Kempfer*, 133 Wis. 2d at 419. Thus, based on *Clark* and *Kempfer*, discovery occurs when the potential plaintiff has information that would give a reasonable person notice of her injury and its cause regardless of whether she has been given a misleading legal opinion.

¶ 25. In addition, once a person either discovers the injury or in the exercise of reasonable diligence should have discovered the injury, nothing, including a misleading legal opinion, can cause the injury to become "undiscovered." The court of appeals stated that "the Claypools' 'discovery' as a matter of law was not necessarily locked in time by their initial belief given the subsequent events." *Claypool*, 195 Wis. 2d at 551. We explicitly reject this conclusion as contrary to the plain language of Wis. Stat. § 893.55(1).

¶ 26. A reading of Wis. Stat. § 893.55(1) proves that once discovery occurs, it is, in fact, locked in time. Sections 893.55(1) and 893.55(1)(a) essentially provide that an action to recover damages for certain types of

301

injuries must be commenced within one year from the date the injury was discovered or in the exercise of reasonable diligence should have been discovered. These sections do not provide that this one year period is tolled if the injury is "undiscovered." To hold otherwise ignores the plain meaning of the statute.

¶ 27. In this case, the record does not provide us with sufficient facts to conclude as a matter of law that discovery did occur or in the exercise of reasonable diligence should have occurred on a particular day. Without a more complete record, we are unable to answer certain questions. What was the state of Mrs. Claypool's vision when she entered the hospital? Did Dr. Levin give her a prognosis? Did any other conversations take place between Mrs. Claypool and Dr. Levin? We are able to glean from the record that Mrs. Claypool entered the hospital on March 6, 1989. At the time she entered the hospital she was very ill and had been suffering problems with her vision. She was treated by Dr. Levin from March 7 until April 6 when she was released from the hospital. The treatment included Dr. Levin administering intravitreous injections or shots to Mrs. Claypool's eyes. When she left the hospital, on April 6, she was permanently blind. Just four days after her release from the hospital, on April 10, Mrs. Claypool and her husband retained attorney Goldstein to investigate whether her blindness was attributable to Dr. Levin. We believe these facts are sufficient to establish that Mrs. Claypool discovered or in the exercise of reasonable diligence should have discovered her injury in March or early April of 1989.

██

¶ 28. At some point in March or early April of 1989 Mrs. Claypool had information sufficient to give a reasonable person notice of her injury and its cause.

The fact that Goldstein told Mrs. Claypool that she did not have a claim can not defeat the fact that she had such an objective basis for knowledge of her injury and its cause. If she did not in fact discover her injury in March or early April of 1989, then in the exercise of reasonable diligence she should have discovered her injury during that period. Accordingly, Mrs. Claypool did not bring her claim within one year from the date that in the exercise of reasonable diligence the injury should have been discovered or within three years from the date of injury. Thus, her claim is barred by Wis. Stat. § 893.55(1) and Dr. Levin is entitled to summary judgment.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 29. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). This case is before us on review of a summary judgment. I dissent because I conclude that the record on Dr. Levin's motion for summary judgment shows that there is a genuine issue as to a material fact. Wis. Stat. (Rule) § 802.08 (1995–96). This is not a case in which the summary judgment record allows for but one reasonable conclusion such that a court can resolve the issue as a matter of law. I conclude, therefore, as did the court of appeals, that a jury must determine when the Claypools discovered, or in the exercise of reasonable diligence should have discovered, Mrs. Claypool's injury.

¶ 30. This action was filed on October 14, 1993, roughly four and one-half years after the alleged negligent conduct of Dr. Levin. Dr. Levin treated Mrs. Claypool between March 6 and April 19, 1989. For the Claypools' claim to survive Dr. Levin's statute of limi-

tations defense, the Claypools must show that they did not discover, nor in the exercise of reasonable diligence should they have discovered, the cause of Mrs. Claypool's injury before October 14, 1992.

¶ 31. The Claypools[1] contend that they did not have reason to know of the cause of Mrs. Claypool's injury until an attorney opined in the summer of 1993 that they had a cause of action against Dr. Levin. It is uncontested that the Claypools filed this action within one year of that attorney's report and within five years of the alleged negligent acts. Dr. Levin contends that the Claypools discovered or should have discovered the injury in April 1989, when they asked their first attorney to advise them whether they had a cause of action against Dr. Levin.

¶ 32. The majority opinion concludes that the Claypools discovered, or in the exercise of reasonable diligence should have discovered, Mrs. Claypool's injury at some point in March or early April of 1989. Thus the majority opinion concludes that an action for malpractice was time-barred.

¶ 33. I agree with the approach of the court of appeals which framed the inquiry as whether the Claypools exercised reasonable diligence to discover the cause of Mrs. Claypool's injury if they did not discover the cause until the summer of 1993. *See also Awve v. Physicians Ins. Co*, 181 Wis. 2d 815, 819, 512 N.W.2d 216 (Ct. App. 1994). Although a jury might find that the Claypools should have discovered the cause of the injury in March or early April 1989, I conclude that the summary judgment record demonstrates that a jury

---

[1] As the majority opinion makes clear, the Claypools allege, in the alternative, that their claim against Dr. Levin was timely, but it was Attorney Goldstein, with the most at stake, who opposed Dr. Levin's motion for summary judgment.

might reasonably find that the Claypools did not discover the cause of the injury until the summer of 1993 and that they exercised reasonable diligence in doing so.

## I.

¶ 34. I first address the law relating to the discovery rule. Under Wis. Stat. § 893.55(1)(b) a plaintiff has one year to commence an action from the time that the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by the defendant's conduct." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d 140 (1986). It is settled that whether a plaintiff exercised reasonable diligence to discover the cause of injury is ordinarily a fact issue for the jury to resolve. *See, e.g., Goff v. Seldera*, 202 Wis. 2d 601, 613, 550 N.W.2d 144 (Ct. App. 1996). Only when the summary judgment record allows for but one reasonable conclusion about when a plaintiff discovered the injury and its cause may the court resolve the issue as a matter of law. *Goff*, 202 Wis. 2d at 613 and n.8; *see also Awve*, 181 Wis. 2d at 823.

¶ 35. I agree with the majority opinion that once discovered an injury cannot be "undiscovered." I do not, however, understand the court of appeals to have suggested otherwise. The court of appeals simply held that regardless of what the Claypools suspected or understood at the time they first contacted Attorney Goldstein, the Claypools may have exercised reasonable diligence in continuing to explore the cause of the injury given that they were advised by their attorney that they had no cause of action against Dr. Levin. *Claypool v. Levin*, 195 Wis. 2d 535, 551, 536 N.W.2d 206 (Ct. App. 1995).

¶ 36. The court of appeals' phrase "not necessarily locked in time" could be understood to suggest that a plaintiff might "undiscover" what he or she had previously discovered. Yet, in context, it is evident that the court of appeals intended to restate the unremarkable proposition that the advice one receives from those to whom one entrusts the investigation of a possible cause of action is relevant to whether a subsequent delay in discovering the cause of the injury is an exercise of reasonable diligence. This point has long been recognized.

¶ 37. In *Borello*, 130 Wis. 2d at 403–04, the plaintiff "believed, suspected, or had a hunch" a short time after having a new furnace installed that the furnace was causing her physical distress and she promptly began to solicit professional advice. Nonetheless, because doctors and other professionals initially told her that her injury was not caused by the furnace, the court held that her cause of action against the furnace company did not accrue until she received a subsequent report from a doctor that the furnace indeed was the cause of her injury.

¶ 38. Subsequent cases have not disturbed this holding of *Borello*. In *Clark v. Erdmann*, 161 Wis. 2d 428, 448, 468 N.W.2d 18 (1991), relied on in the majority opinion, the court explicitly distinguished *Borello* on these grounds: "[U]nlike the plaintiff in *Borello*, Clark was never told by medical experts that her injury was not caused by what she ultimately determined to be its cause." I agree with the court of appeals, therefore, that "in this important regard *Borello* [rather than *Clark*] corresponds more exactly to the instant case." *Claypool*, 195 Wis. 2d at 550.

¶ 39. I see no basis for the majority opinion's unsupported conclusion that based on *Clark* and

306

*Kempfer v. Evers*, 133 Wis. 2d 415, 395 N.W.2d 812 (Ct. App. 1986), discovery occurs "regardless of whether [the plaintiff] has been given a misleading legal opinion." Majority op. at 301. Rather, I would adopt the analysis of the court of appeals which is more consistent with *Borello*.

## II.

¶ 40. I turn now to the facts set forth in the record and the reasonable inferences which may be drawn from those facts. An appellate court reviews a grant or denial of summary judgment independently, applying the methodology of Wis. Stat. (Rule) § 802.08. "On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact. . . . Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment." *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 41. Although the majority opinion states the proper methodology of review, I believe it fails to apply that methodology. The majority opinion ignores the competing factual inferences presented in this record. Two sets of competing factual inferences require determination by a fact finder.

¶ 42. First, the summary judgment record suggests that the Claypools may not have had reason to believe that Mrs. Claypool's blindness was caused by Dr. Levin's conduct. According to Mrs. Claypool's deposition testimony, and Attorney Goldstein's notes of his conversation with the Claypools, Mrs. Claypool's blindness began before she first entered the hospital.[2] A jury

---

[2] Although the testimony is conflicting, Mrs. Claypool testified in her deposition as follows: "I suppose I wasn't seeing when

might find it reasonable for the Claypools not to have known until 1993 whether her blindness was caused by disease or by malpractice.

¶ 43. Second, it is uncontested that the Claypools contacted their family attorney soon after Mrs. Claypool's treatment by Dr. Levin and that Attorney Goldstein told the Claypools they did not have a cause of action against Dr. Levin. The summary judgment materials do not resolve the time at which Attorney Goldstein provided this report.[3] I agree with the court of appeals that "the uncertainty surrounding the nature and timing of the communication between Goldstein and the Claypools leaves the issue of the Claypools' reasonable diligence appropriate for a jury's determination." *Claypool*, 195 Wis. 2d at 553.

¶ 44. The record leaves open competing inferences with regard to when the Claypools, in the exercise of reasonable diligence, should have discovered the cause of Mrs. Claypool's blindness. I believe the majority improperly assumes the role of fact finder and resolves the competing factual inferences presented in the summary judgment record. The majority opinion acknowledges that the record on summary judgment is insufficient to resolve several significant questions. Majority op. at 302. The issue

they took me to the hospital." R. 16 at 13. When asked if she saw Dr. Levin at the hospital, Mrs. Claypool responded that she did not: "Because I couldn't see." R. 16 at 13–14.

Attorney Goldstein's notes for the morning of Mrs. Claypool's admission to the hospital include the following: "Took her to Columbia Hospital 1:30 AM—Couldn't see anything—Admitted to hospital." R. 14 at 13.

[3] Mr. Claypool testified in his deposition that he did not remember when he was given this information by Attorney Goldstein but that it was not in 1992.

then is whether the competing factual inferences which can be drawn from the insufficient record raise a genuine issue of material fact. I conclude that they do and that the competing factual inferences cannot be resolved as a matter of law.

¶ 45. I would affirm the court of appeals and remand the cause for a jury's determination of whether the Claypools exercised reasonable diligence when they did not discover the cause of the alleged injury until the summer of 1993.

¶ 46. For the reasons set forth, I dissent.

¶ 47. I am authorized to state that Justice Janine P. Geske joins this opinion.