PER CURIAM.
¶1 C&C Administration, Inc. (C&C) appeals from a judgment awarding C&C damages for breach of contract and associated expenses incurred in relation to a building renovation project undertaken by C&C's landlord, Signature Properties LLC, and its principal, Kevin Harry (hereafter Signature). We affirm.
¶2 C&C, a former tenant of Signature, sought damages because its operations were negatively affected or delayed by Signature's building renovation. After a court trial, the circuit court concluded that Signature breached its lease with C&C by reducing C&C's rental space during and after the renovation. The circuit court awarded C&C damages as follows: $ 1644.30 as a reduction in its rent obligation, $ 900 as a computer server moving expense, $ 245 to replace a laser printer damaged during the renovation, and $ 80 for space heaters to address a lack of adequate heating during the renovation. In addition, the circuit court determined that neither Signature nor Harry made misrepresentations to C&C about the course and timing of the renovation.
¶3 On appeal, C&C argues that it is entitled to additional damages. In so arguing, C&C essentially attempts to reargue its case to this court. We do not weigh the evidence anew. Rather, we are bound by our standard of review which requires us to determine whether the evidence was sufficient for the findings made by the circuit court. Jacobson v. American Tool Cos. , 222 Wis. 2d 384, 389, 588 N.W.2d 67 (Ct. App. 1998). We will uphold the circuit court's findings of fact unless they are clearly erroneous. Id. at 389-90. We accept the circuit court's determinations regarding the weight and credibility of the evidence. Id. at 390. We observe that the circuit court's findings regarding C&C's damages were based on its determinations regarding the credibility and the weight of the evidence.
¶4 C&C argues that the circuit court should have awarded it additional damages as rent reduction for October and November 2014 for loss of use of a storage/mailroom and sixty percent of C&C's reception area. The circuit court rejected this claim on the following grounds: the parties negotiated a rent reduction for December 2014 and January 2015, but they failed to address rent reduction for October and November 2014 even though there were space usability issues at the time. C&C argues that regardless of the parties' negotiations, C&C had unusable space for which it should have been compensated. The circuit court placed greater weight on C&C's failure to seek a rent reduction for October and November 2014 even as it negotiated rent reduction for subsequent months. The record supports the circuit court's decision.
¶5 C&C also seeks rent reduction for what it alleges was a complete inability to use its storage/mailroom from March 2015 through September 2016.[1] The record supports the circuit court's decision to deny the requested rent reduction. Gene Eggert, the renovation project architect, whom the circuit court specifically found credible, testified that an occupancy permit for the storage/mailroom was issued in February 2015, but C&C did not resume using the room. Eggert also testified that before the renovation, the room was used for storage, not as an office, and a section of the room was not scheduled to be renovated. After the renovation concluded, C&C declined to resume using the room because the area used for storage had not been renovated. C&C also demanded additional modifications to the room so that it could be used as a mailroom and office space with desks and equipment, a use to which it had not been put prior to the renovation. The record supports the circuit court's refusal to award rent reduction because post-renovation, the room was capable of being used consistent with its pre-renovation use.
¶6 C&C next argues that the circuit court should have awarded damages for costs it incurred for off-site storage. The circuit court declined to award such damages because (1) C&C did not establish that such expenses were incurred in connection with the renovation and (2) any need for off-site storage constituted an "inconvenience" or "annoyance" which the lease expressly excluded from the landlord's liability.[2] C&C's argument is premised on its need to use off-site storage because the storage/mailroom was not in the same condition as before the renovation. But, as we held above, the record supports a determination that the storage/mailroom was capable of being used post-renovation as it was used pre-renovation. The circuit court did not err in denying damages for off-site storage.
¶7 C&C seeks an additional $ 749.07 in damages representing the cost of hiring movers in response to the renovation. The circuit court found that the parties did not agree that Signature would compensate C&C for hiring movers. Rather, the circuit court found that during the construction process, Signature offered to pay to move C&C's property to other portions of the building. C&C did not take advantage of Signature's willingness to move C&C's property within the building. Other than contending that it should have been awarded an additional $ 749.07 in damages, C&C does not address these findings and show why they are clearly erroneous. We address this issue no further. See Fritz v. McGrath , 146 Wis. 2d 681, 686, 431 N.W.2d 751 (Ct. App. 1988) (we do not consider arguments broadly stated but not specifically argued).
¶8 C&C submitted a $ 1400 invoice from Syntek Solutions for moving its server. The circuit court allowed $ 900 of that expense but disallowed $ 500 of the $ 1400 invoice because those charges were neither verified nor reasonable. Other than contending that it should have been awarded the additional $ 500, C&C does not address these findings and show why they are clearly erroneous. We address this issue no further. See Fritz , 146 Wis. 2d at 686.[3]
¶9 C&C has not established that the circuit court's findings of fact, including its damage award, were clearly erroneous. We affirm the damage award.
¶10 C&C next argues that the circuit court erroneously rejected its intentional misrepresentation claim. The elements of intentional misrepresentation are: "(1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." Kaloti Enters., Inc. v. Kellogg Sales Co. , 2005 WI 111, ¶12, 283 Wis. 2d 555, 699 N.W.2d 205 (citation omitted). Because C&C did not satisfy the elements of the intentional misrepresentation claim, the circuit court did not err in rejecting it.
¶11 C&C argues that its damages should be doubled due to Signature's intentional misrepresentations.
¶12 C&C asserts that Harry misrepresented that he owned the building when Signature Properties, an LLC Harry created, actually owned the building. C&C does not demonstrate on appeal how the elements of intentional misrepresentation are satisfied by Harry's misstatement, which Harry corrected during the trial in this matter by explaining that he considered himself and Signature Properties synonymous in relation to issues involving the building. C&C does not argue that Harry's misstatement was made with intent to defraud and was relied upon by C&C to its detriment. See id. We address this issue no further. See Fritz , 146 Wis. 2d at 686.
¶13 C&C also claims that Signature and Harry misrepresented the length[4] and nature of the renovation project. The circuit court found that neither Signature nor Harry made any misrepresentations about the course and timing of the renovation nor engaged in any egregious conduct in relation to the renovation. The court found that the renovation did not materially interfere with the conduct of C&C's business. C&C does not convincingly argue that the statements upon which it relies for its intentional misrepresentation claim (projections about when the renovation would start and be completed, when the building permit was issued and the significance of that date, and others) satisfy the elements of intentional misrepresentation, particularly the element of intent to defraud. We address this issue no further. See Fritz , 146 Wis. 2d at 686.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The circuit court found that C&C was unable to use this room only through February 2015, and the court included rent reduction for this room in the damage award.

Paragraph 8B of the parties' lease states that there is no diminution of rent and no liability on the landlord "by reason of inconvenience, annoyance, or injury to business arising from the making of any repairs, alterations, additions or improvements" in the building.

C&C also argues that Harry misrepresented that Signature would pay all IT costs relating to the renovation. We have affirmed the circuit court's server moving expense award, which included its determination that there was a lack of proof for additional damages. Given the lack of proof, we do not address the claim that Harry made misrepresentations relating to covering C&C's IT costs.

The circuit court found that C&C contributed to the delays in the renovation.